UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON UNDERWOOD,

    Plaintiff,

vs.                                                                                                          Case No. 16-10226

WELLS FARGO HOME MORTGAGE, INC.,                                  HON. AVERN COHN

    Defendant.

_____/

**<u>MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT (Doc. 7)</u>[1]**

**I.    INTRODUCTION**

This is another of many cases pending in this district involving a home mortgage default and subsequent foreclosure proceedings. Plaintiff Jason Underwood (Underwood) is suing Defendant Wells Fargo Home Mortgage, Inc. (Wells Fargo), the mortgagee, because it declined to approve his attempted short sales of the property and instead initiated foreclosure proceedings against him. Wells Fargo removed this case from Wayne County Circuit Court, Case No. 15-016977. The complaint asserts the following claims, phrased as:

    Count I:      Attempted Wrongful Foreclosure

    Count II:     Breach of Contract

    Count III:    Fraudulent Misrepresentation

    Count IV:    Declaratory Relief, Foreclosure Barred by Unclean Hands

---

[1] Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Count V:     Preliminary Injunction

Count VI:    Equitable Mortgage

Now before the Court is Defendant Wells Fargo's motion to dismiss and/or for summary judgment. (Doc. 7). The matter is now ready for decision. For the reasons that follow, Defendant's motion to dismiss the complaint will be granted.

## II.     BACKGROUND

In 2003, Underwood obtained a $110,100 mortgage loan for a house located at 19952 Elkhart Street, Harper Woods, MI 48225. In doing so, he initialed, signed, and dated an eight-page mortgage agreement. (*See* Doc. 7-2). It provided, in part:

> 9. Grounds for Acceleration of Debt.
> (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
>   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

. . .

> 13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. . . . Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

. . .

> 17. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. . . .
>     If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 13. Lender shall

2

> publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. . . .

(*Id.* at 6-8). In 2004, the initial mortgagee assigned its interest to Wells Fargo. (Doc. 7-3).

Underwood alleges that he lived in the house until July 2014, when he left because the area "was no longer safe." (Compl. ¶¶ 12-13). In October, he requested Wells Fargo to consider him for a short sale. In response, Wells Fargo sent him documents including the U.S. Department of Housing and Urban Development (HUD)'s pre-foreclosure sale procedures, which said:

> There are certain criteria which must be met before you can be permitted to pursue a Pre-foreclosure Sale: (1) you must be an owner-occupant; and (2) *your mortgage must be in default as the result of a documentable involuntary loss of income or unavoidable increase in expenses*.

(Doc. 7-5 at 4) (emphasis added).

In November, Underwood got a short-sale offer of $20,500. He submitted it for approval to Wells Fargo, which informed him in December that his account had to be at least 31 days past due in order to be eligible for a short sale. Underwood then stopped making mortgage payments. In February 2015, Wells Fargo sent him a letter indicating he was in default and giving him an opportunity to bring payments current. (Doc. 7-10). It also sent a letter asking him to provide missing information for the short-sale request. (Doc. 7-11). The house at the time allegedly was damaged due to vandalism. (Compl. ¶ 36).

In April, as part of the short-sale-approval process, Underwood signed a HUD "Approval to Participate" form. (Doc. 7-13). He acknowledged that the program required (1) the net proceeds of the sale, payable to HUD, to be at least $21,120; and

3

(2) the list price to be "at or near $24,000," the property's appraisal value. (*Id.* at 4). He was given a deadline of August 30, 2015 to finalize the sale. (*Id.*).

In May, Wells Fargo declined to approve Underwood's initial $20,500 offer for a short sale, as it did not meet the HUD requirement of $21,120 in net proceeds. (Doc. 7-14). Before the August deadline, Underwood requested approval for another offer of $20,000, which Wells Fargo rejected for the same reason. (Doc. 7-16).[2]

Wells Fargo initiated foreclosure in October and sent Underwood a letter informing him of this. (Doc. 7-18).[3] With the foreclosure underway, Underwood requested HUD approval for a variance to resume pursuing a short sale. Wells Fargo confirmed the request and again asked Underwood to provide additional information.

In November, the house allegedly was vandalized and damaged again. (Compl. ¶ 62). After learning of this, Wells Fargo denied Underwood's short-sale request based on the property's condition. (Doc. 7-25). In December 2015, Underwood requested a deed in lieu of foreclosure, and Wells Fargo informed him that he had provided insufficient information from which to determine his eligibility. Wells Fargo posted a foreclosure notice on the property and advertised a sale by publication.

In this case, Underwood previously moved for a temporary restraining order and preliminary injunction. (Doc. 5). The court denied those requests after holding a status conference on the motion. (Doc. 12).

---

[2] Underwood acknowledges this letter from Wells Fargo declining to approve his short-sale request based on the second offer. (Compl. ¶ 52).

[3] Underwood indicates that he "received" this letter from Wells Fargo informing him of the foreclosure. (Compl. ¶ 58).

4

### III.   LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotation and citation omitted).

In ruling on a motion to dismiss, the court may consider the complaint as well as (1) documents referenced in the pleadings which are central to plaintiff's claims, and (2) other matters of which a court may properly take notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  *See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  Here, the court has considered documents that are

attached to the motion to dismiss, referenced in the complaint, and central to plaintiff's claims.

## IV. DISCUSSION

### A. Count I: Attempted Wrongful Foreclosure

Underwood claims that Wells Fargo's initiation of foreclosure proceedings against him violates Michigan and federal law, namely, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605; 12 C.F.R. § 1024.41; and M.C.L. § 600.3201, *et seq.* (Compl. ¶¶ 84-111). As support, he alleges that Wells Fargo: (1) failed to provide proper notice of default; (2) wrongly began foreclosure proceedings while he was being considered for foreclosure alternatives; (3) neglected to inform him of loss-mitigation options once his account became delinquent, and to adequately review his eligibility for foreclosure alternatives; and (4) acted in bad faith by asking him to apply for a short sale "that was never intended to be completed." (*Id.*).

These assertions are not actionable. First, as Wells Fargo correctly points out, it gave Underwood notice of his default and the initiation of foreclosure proceedings by sending him letters to this effect in the mail. (*See* Docs. 7-10, 7-18). Although Underwood tries to avert this fact by claiming Wells Fargo has no "proof that the letters were indeed sent via 1st class mail," such a showing is not required. (*See* Doc. 13 at 9). In particular, companies may establish mailing with "proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance." *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1324 (6th Cir. 1972). Wells Fargo's attached business letters are dated and addressed to Underwood.

They are coded with internal identification numbers, names, and descriptions.[4] Moreover, the correspondence notifies him of (1) his loan default, (2) his opportunity to cure, (3) programs available to help with his mortgage payments, and (4) the initiation of foreclosure proceedings against him. By sending the attached letters to Underwood, Wells Fargo gave him adequate notice of the events of which he now complains. Thus, his allegations premised on a lack of notice are deficient as a matter of law.

Second, Underwood raises a "dual tracking" claim. Specifically, he alleges that Wells Fargo initiated foreclosure while its review of his short-sale request still was pending. However, this does not state a claim for which relief can be granted. Specifically, according to the documents attached to the motion to dismiss, Wells Fargo denied those of Underwood's requests for short-sale approval that were timely submitted *before* it brought foreclosure proceedings against him. (*See* Docs. 7-13, 7-14, 7-16, 7-18). Because the denials of the applications happened before foreclosure proceedings began, the timing of events does not support a dual-tracking claim.

Third, the complaint asserts that Wells Fargo did not properly discharge its duties to advise Underwood of loss-mitigation options and review his eligibility for foreclosure alternatives. RESPA and implementing regulations require qualifying loan servicers to take certain efforts to ensure that borrowers' loss-mitigation applications are complete, and to promptly evaluate them and render eligibility determinations. *See* 12 U.S.C. § 2605(e)-(f); 12 C.F.R. § 1024.41(b)-(c). However, as Wells Fargo correctly observes,

---

[4] The complaint acknowledges Underwood's receipt of Wells Fargo's letter informing him of the foreclosure and its mailing of another letter about a short sale. Underwood does not contest that he actually received the letters at issue. Oddly, he instead selectively acknowledges receipt of some letters while not acknowledging others, when all were sent through the same business system.

it advised Underwood of loss-mitigation options and afforded him appropriate review of the foreclosure alternatives for which he applied. Specifically, Wells Fargo's letter to Underwood notifying him that his account was past due told him of assistance programs such as repayment plans, loan modification, deeds in lieu of foreclosure, and short sales. (*See* Doc. 7-9). Moreover, Underwood took advantage of such programs by pursuing short sales and a deed in lieu of foreclosure. Wells Fargo considered each of these requests, asked for supporting documentation, and notified Underwood of its eligibility determinations. Because it reviewed Underwood's requests and kept him informed of his options through routine correspondence, Wells Fargo met its obligations under RESPA. Thus, this allegation does not state an actionable claim.

Finally, Underwood's claim that Wells Fargo acted in bad faith by asking him to apply for a short sale "that was never intended to be completed" is not cognizable. Specifically, the documents attached to the motion to dismiss show that Wells Fargo provided Underwood with written disclosures and instructions about his short-sale requests. Moreover, Wells Fargo reviewed Underwood's two timely short-sale offers over a period of roughly nine months, after repeatedly asking for previously requested documentation. As part of that process, it had him sign an "Approval to Participate" form detailing HUD's net-proceeds and listing-price requirements, among others. Wells Fargo's actions do not reflect an intention not to review or consider Underwood's requests. In contrast, they evince due diligence on Wells Fargo's part in processing his many requests and communicating its decisions regarding them. As such, there is no basis for relief stemming from Underwood's allegations of bad faith.

### B. Count II: Breach of Contract

Underwood asserts that Wells Fargo breached the mortgage agreement by failing to give proper notice of default and foreclosure. He also alleges that Wells Fargo breached the implied covenant of good faith and fair dealing by not giving him adequate notice and misleading him as to loss-mitigation options and foreclosure alternatives.

Underwood's allegation regarding his lack of notice under the contract does not state an actionable claim. Specifically, Paragraph 13 provides that Wells Fargo was obliged to send any borrower notices to Underwood by first-class mail. (*See* Doc. 7-2 at 7). Under Paragraph 17, notice was required if Wells Fargo invoked the power of sale. (*See id.* at 8). Here, Wells Fargo complied with the mortgage contract's terms by mailing Underwood written notices informing him of his default and the later initiation of foreclosure proceedings. (*See* Docs. 7-10, 7-18). As to Underwood's reliance on an implied covenant of good faith and fair dealing to assert a claim against Wells Fargo, his reliance is misplaced. Specifically, there is no freestanding cause of action for a breach of that implied covenant. *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 35 (Mich. Ct. App. 2006). As such, there is no claim for Underwood to pursue.

### C. Count III: Fraudulent Misrepresentation

The complaint alleges that Wells Fargo made fraudulent representations to Underwood by indicating it would consider him in good faith for the short-sale program, while knowing this was a false statement. In order to prove a claim of fraudulent misrepresentation, a plaintiff must satisfy six elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that

9

the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 280 Mich. App. 397, 403 (Mich. Ct. App. 2008). Here, Underwood's claim is legally insufficient. Specifically, as Wells Fargo correctly notes, there is no indication that it made any false representation to Underwood. To the contrary, Wells Fargo rightly told him that HUD required a loan default in order to qualify for a short sale. Moreover, Wells Fargo correctly informed Underwood of HUD's requirement that net proceeds from any short sale exceed a $21,120 threshold. Finally, Wells Fargo properly denied Underwood's two timely short-sale requests on this basis, as his offers fell below that threshold. Thus, there is no legal ground to support a fraudulent-misrepresentation claim based on the complaint's allegations.

### D. Count IV: Declaratory Relief, Foreclosure Barred by Unclean Hands

Underwood asserts that Wells Fargo acted with "unclean hands" in its dealings with him and in processing his short-sale requests. He cites "intentional delays" in its handling his requests by, for example, seeking documentation to support them. The unclean-hands doctrine is an equitable defense, not a cause of action. *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. 2012). Thus, it does not provide Underwood with any legal basis for relief in this instance.

### E. Count V: Preliminary Injunction

The complaint seeks injunctive relief based on the above claims. The court has denied Underwood's request for a preliminary injunction. (*See* Doc. 12). Moreover, an injunction is a form of remedy, not a separate cause of action. *See Terlecki v. Stewart*, 278 Mich. App. 644, 663 (Mich. Ct. App. 2008). Thus, this claim is not cognizable.

### F. Count VI: Equitable Mortgage

Finally, Underwood seeks a judicially imposed "equitable mortgage" to relieve him from the foreclosure to which he is subject. However, as Wells Fargo correctly points out, where a valid written mortgage agreement exists, there is no legal basis for such a remedy. *See Eastbrook Homes, Inc. v. Treasury Dep't*, 296 Mich. App. 336, 351-53 (Mich. Ct. App. 2012). Thus, this claim is not actionable.

### V. CONCLUSION

For the above reasons, Defendant Wells Fargo's motion to dismiss Plaintiff Underwood's claims against it is GRANTED, and this case is DISMISSED.

SO ORDERED.

S/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: June 8, 2016
      Detroit, Michigan